UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/22/2025
```

------------------------------------------------------------------------X
                                     :

VERONICA TOXQUI, et al.,                   :

                        Plaintiffs,      :

                                         :           24-cv-03339 (LJL)

         -v-                       :

                                       :        OPINION AND ORDER

R&P PIZZA CORP., et al.,                :

                                     :

                        Defendants.     :

                                       :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Veronica Toxqui ("Veronica") and her son Raul Giron ("Gael") (collectively, "Plaintiffs") bring this action under the federal Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL") against: their employer R&P Pizza Corp. ("R&P Pizza"), doing business as D'Angelo's Pizzeria and Restaurant; Rigoberto Jimenez ("Rigoberto"), who served as the President of R&P Pizza; and Pabo Rosales ("Pablo"), who served as its Vice President (collectively, "Defendants"). Dkt. No. 1. Plaintiffs allege that Defendants failed to pay them overtime, failed to provide wage notices and pay stubs in violation of FLSA and the NYLL, failed to pay "spread of hours" pay, and failed to pay wages at the prescribed frequency in violation of the NYLL. Plaintiffs also claim that R&P Pizza and Rigoberto failed to file a proper W-2 form for Gael and that Defendants have retaliated against Veronica. Defendants bring claims as third-party plaintiffs against Veronica's husband and Raul's father, Raul Giron Cruz ("Raul"), for contribution and indemnification. Dkt. No. 18.

Plaintiffs move for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking a judgment of joint and several liability against all of the Defendants as to each of Plaintiffs' claims. Dkt. Nos. 52, 54. Defendants oppose Plaintiffs' motion and cross-move for

summary judgment dismissing Plaintiffs' claims under both FLSA and the NYLL against Rigoberto.  Dkt. No. 58.

For the following reasons, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part, and Defendants' cross motion for summary judgment is DENIED.

## BACKGROUND

The Court construes the facts in favor of the non-moving party.  The following facts are undisputed.

R&P Pizza is a New York corporation that operates a pizzeria restaurant doing business as D'Angelo's Pizzeria and Restaurant ("D'Angelo's") at 904 East Gun Hill Road, Bronx, New York.  Dkt. No. 60 ¶ 26.  The corporation is named for Rigoberto and Pablo, who are also the company's two largest shareholders.  *Id.* ¶ 28.  They purchased R&P Pizza in 2004 as co-owners, each owning 50% shares.  *Id.*  Rigoberto holds the title of President of R&P Pizza.  Dkt. No. 63 ¶ 5; Dkt. No. 58-5 ¶ 2.  Palbo holds the title of Vice President of R&P Pizza and is responsible for the day-to-day management of the pizzeria.  Dkt. No. 63 ¶ 4.  He has also in the past worked as a "pizza man" at the restaurant.  *Id.*  Rigoberto is Pablo's uncle.  Dkt. No. 60 ¶ 29.  R&P Pizza had gross revenues in excess of $500,000 in all years relevant to Plaintiffs' FLSA claims.  *Id.* ¶ 27.

Both Plaintiffs worked in the kitchen at D'Angelo's in food preparation and cooking.  *Id.* ¶ 3.  Veronica worked for R&P Pizza between July 2018 and October 26, 2023.  *Id.* ¶ 1; Dkt. No. 53-3 ¶ 3.  Gael worked in the pizzeria full time from the middle of 2022 to October 26, 2023, and part-time before then.  Dkt. No. 60 ¶ 2; Dkt. No. 53-4 ¶ 3.  Raul also stopped working for R&P Pizza in October of 2023.  Dkt. No. 63 ¶ 14.  Both Plaintiffs were paid for their work on an hourly basis.  Dkt. No. 60 ¶ 4.  Veronica was always paid in cash and was never issued pay stubs.  *Id.* ¶¶ 9–10.  The amount paid in cash to Plaintiffs was recorded by Defendants on a daily sheet and also on a ledger.  *Id.* ¶ 13.

On May 1, 2024, Veronica and Gael filed suit against R&P Pizza, Rigoberto, and Pablo. Dkt. No. 1.  Plaintiffs assert that Defendants violated the FLSA by (1) failing to pay each of them at a rate of one and a half their normal hourly rate for hours worked over forty in a workweek; (2) failing to pay them on their prescribed paydays; and (3) failing to make, keep, and preserve accurate records regarding their wages, hours, and other conditions of employment. *Id.* ¶¶ 47–50. Plaintiffs assert that Defendants acted in willful violation of FLSA, entitling them to liquidated damages under that statute. *Id.* ¶¶ 51–53.  Plaintiffs allege that Defendants violated the NYLL by (1) failing to pay them their minimum wage; (2) failing to pay them at a rate of one and a half times their normal hourly rates (or minimum wage, whichever was greater) for hours over forty in a workweek; (3) failing to pay them an additional one-hour's pay at the applicable minimum wage rate on days where they worked more than ten hours; (4) failing to pay them at regular weekly intervals; (5) failing to furnish them with the required wage notices and pay stubs; and (6) committing record-keeping violations. *Id.* ¶¶ 56–72.  Gael alleges that Defendants violated 26 U.S.C. § 7434 by filing fraudulent returns with respect to payments made to him. *Id.* ¶¶ 82–84.

## PROCEDURAL HISTORY

The Complaint was filed on May 1, 2024.  Dkt. No. 1.  Defendants submitted their answer to the Complaint on December 23, 2024, Dkt. No. 33, and discovery concluded on April 21, 2025, Dkt. No. 39.   Plaintiffs submitted a motion for summary judgment and accompanying memorandum of law on June 20, 2025.  Dkt. Nos. 52, 54.  Along with the motion, they filed a declaration with thirty-two exhibits, including transcripts of depositions with Pablo and Rigoberto, declarations of Veronica and Gael, a declaration of Raul, and various time logs and financial statements.  Dkt. No. 53.

Defendants submitted their opposition to the motion and supporting memorandum of law on July 14, 2025, and at the same time cross-moved for summary judgment under FLSA and the

NYLL as to the claims against Rigoberto. Dkt. No. 58. Defendants attached seven exhibits to their motion, including depositions of Pablo, Rigoberto, Veronica, and Gael; a declaration from Rigoberto; and time records for Gael and Veronica. *Id.* They submitted their Rule 56.1 statement of undisputed facts on July 17, 2025. Dkt. No. 60. Plaintiffs submitted their own Rule 56.1 statement on July 28, 2025, Dkt. No. 63[1], and submitted their reply in further support of summary judgment and in opposition to the cross-motion for summary judgment the same day, Dkt. No. 64. A jury trial is scheduled for October 6, 2025. Dkt. No. 46 at 2.

## LEGAL STANDARD

Summary judgment under Federal Rule of Civil Procedure 56 is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).

In determining whether there are any genuine issues of material fact, the Court must view all facts "in the light most favorable to the non-moving party," *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), and the movant bears the burden of demonstrating that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). Where each party moves for summary judgment, "each party's motion must be examined on its own merits, and in each case all

---

[1] Plaintiffs submitted a motion seeking leave to file an exhibit attached to their motion for summary judgment under seal. Dkt. No. 51. The opinion does not reference those sealed documents. The motion is granted.

reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  It may not rely on "mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted), or "on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible," *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).  Rather, to survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), and demonstrating more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  If "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment shall be denied. *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir. 1983).

"Local Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York prescribes the manner and method in which a party is to present undisputed issues of fact to the Court." *Mangahas v. Eight Oranges Inc.*, 754 F. Supp. 3d 468, 483 (S.D.N.Y. 2024)  It requires a moving party to include with its Motion for Summary Judgment "a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  L. Civ. R. 56.1(a). The party in opposition must also "include a correspondingly numbered paragraph responding to

each numbered paragraph in the statement of the moving party." *Id.* 56.1(b). For both submissions, the statements "must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." *Id.* 56.1(d). If the party served the Rule 56.1 statement does not "specifically controvert[]" facts stated therein, those uncontested facts "will be deemed to be admitted for the purposes of the motion." *Id.* 56.1(c). Any opposition must be supported with admissible evidence, or "the Court is instructed to disregard those portions and deem the factual statements in the original Local Rule 56.1 statements admitted." *Mangahas*, 754 F. Supp. 3d at 483.

## DISCUSSION

Plaintiffs ask the Court to rule that, as a matter of law: (1) Defendants did not pay Plaintiffs overtime as required by FLSA and the NYLL; (2) Defendants did not pay Plaintiffs a minimum wage as required by the NYLL; (3) Defendants did not pay Plaintiffs spread of hours pay as required by the NYLL; (4) Defendants did not give Plaintiffs wage notices as required by the NYLL; (5) Defendants did not issue Plaintiffs pay stubs as required by the NYLL; (6) Defendants did not pay Plaintiffs on a weekly basis as required by the NYLL; and (7) Defendants are liable to Gael for issuing him inaccurate W-2 tax forms. Dkt. No. 54. They ask the Court to rule also, as a matter of law, that R&P Pizza, Pablo, and Rigoberto are each liable to Plaintiffs as their "employer" under FLSA and the NYLL. *Id.*

Defendants, for their part, ask the Court to rule, as a matter of law, that Rigoberto was not the Plaintiffs' employer. Dkt. No. 58. And they oppose Plaintiffs' motion for summary judgment as to their wage claims. *Id.*

I.    **There Is a Material Dispute of Fact as to Whether Rigoberto Was Plaintiffs'**
      **Employer.**

Many of Plaintiffs' claims may run only against entities or individuals that qualify as their

"employer" under federal and New York law.  The Court thus first addresses whether R&P Pizza,

Pablo, and Rigoberto qualify as Veronica and Gael's "employers" for purposes of FLSA and the

NYLL.

Preliminarily, it is not disputed that Veronica or Gael are covered employees.  FLSA

provides coverage for any employee who is "employed in an enterprise engaged in commerce."

29 U.S.C. § 207.  Enterprises "engaged in commerce" are those that have "(a) an annual gross

sales volume of at least $500,000, and who have (b) 'employees handling, selling or otherwise

working on goods or materials that have been moving in or produced for commerce by any

person.'"  *Brito v. Marina's Bakery Corp.*, 2022 WL 875099, at *7 (E.D.N.Y. Mar. 24, 2022)

(quoting 29 U.S.C. § 203(s)(1)(A)(i)–(ii)).  Thus, "engagement in interstate commerce, either by

an employee or the employer as a whole, is a prerequisite for liability."  *Georges v. Detroit Pizza*

*NYC LLC*, 2024 WL 1195727, at *4 (S.D.N.Y. Mar. 20, 2024) (quoting *Ethelberth v. Choice Sec.*

*Co.*, 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015)).  That standard "is rarely difficult to establish."  *Id.*

(quoting *Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 n.7 (2d Cir. 2009)).

R&P Pizza satisfies these criteria.  It is undisputed that it had annual gross sales volumes

of at least $500,000 and employed more than two employees in the relevant years.  And because

it used products and materials that traveled in interstate commerce, it satisfies the interstate

commerce element of FLSA.  *See Keawsri v. Ramen-Ya Inc.*, 2021 WL 3540671, at *5 (S.D.N.Y.

Aug. 10, 2021); *Detroit Pizza*, 2024 WL 1195727, at *4.  "Coverage under the NYLL substantively

mirrors that under the FLSA, except that the NYLL does not have a minimum amount of sales or

nexus to interstate commerce requirements." *Lopez v. J&L Sky Contractors Corp.*, 2025 WL 1859690, at *5 (E.D.N.Y. July 7, 2025).

There is also no genuine dispute that R&P Pizza and Pablo both constitute "employers" with respect to Plaintiffs' claims under both statutes. FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term "person" may be an "individual" or "any organized group of persons," including corporations. *Id.* § 203(a). R&P Pizza, the corporate entity that employed Veronica and Gael, is clearly within the ambit of the statute. *See Garcia v. AKR Corp.*, 2013 WL 685613, at *2 (E.D.N.Y. Jan. 10, 2013).

As to Pablo, "[c]ourts utilize the 'economic reality' test to determine whether a particular individual is an employer. This four-factor test considers 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Lopez v. MNAF Pizzeria, Inc.*, 2021 WL 1164336, at *5 (S.D.N.Y. Mar. 25, 2021) (quoting *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 139 (2d Cir. 1999)). "Courts applying both the FLSA and the New York Labor Law have concluded that the standards by which a court determines whether an entity is an 'employer' under the FLSA also govern that determination under the NYLL." *Hart v. Rick's Cabaret Int'l Inc.*, 2010 WL 5297221, at *2 (S.D.N.Y. Dec. 20, 2010).

Pablo was an employer under both FLSA and the NYLL. Pablo was the manager of R&P Pizza. Dkt. No. 53-1 at 57:7–9. He was involved in employment decisions at the pizzeria. *Id.* at 49:20–23, 66:12–67:17; Dkt. No. 53-2 at 123:20–25.[2] Pablo interviewed and hired both Veronica

---

[2] There is also evidence that Raul had the power to hire and fire employees. Dkt. No. 53-1 at

and Gael.  Dkt. No. 53-3 ¶ 4; Dkt. No. 53-4 ¶ 5.  He told both Veronica and Gael about their respective positions, work hours, and pay.  Dkt. No. 53-3 ¶ 5; Dkt. No. 53-4 ¶ 5.  On a regular week-to-week basis, he calculated the pay that was due to both Veronica and Gael and handed them their pay.  Dkt. No. 53-3 ¶¶ 9–10; Dkt. No. 53-4 ¶ 10.  Pablo was also involved in the decision to end the employment of both Veronica and Gael.  Dkt. No. 53-3 ¶ 17; Dkt. No. 53-4 ¶ 21.  According to Raul, Pablo interviewed people for jobs and decided who would be hired and made their schedules and told them their pay.  Dkt. No. 53-5 ¶¶ 11, 12, 14.  Those undisputed facts establish Pablo as an employer as a matter of law under the economic reality test.  *See Lopez*, 2021 WL 1164336, at *5; *Herman*, 172 F.3d at 140.

The parties dispute, however, whether Rigoberto was an employer.  Defendants move for summary judgment on the theory that Rigoberto was not an employer.  Dkt. No. 58 at 8, 10; *see also* Dkt. No. 69 at 5–7.  Plaintiffs argue that Rigoberto was an employer as a matter of law or, in the alternative, that there is at least a question of fact whether Rigoberto was an employer.  Dkt. No. 54 at 14–15; Dkt. No. 64 at 5–6.  Neither party is entitled to summary judgment; whether Rigoberto was an employer raises a genuine issue of material fact appropriate for resolution at trial.

Rigoberto was an owner of R&P Pizza and served as President of the company.  Dkt. No. 60 ¶ 28; Dkt. No. 63 ¶ 5; Dkt. No. 58 at 1–2; Dkt. No. 53-2 at 34:16–18.  However, "[e]vidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status."

---

66:12–17; Dkt. No. 53-2 at 123:20–25.  That does not impact Pablo's status as an employer because an employee can have more than one employer, and in that case "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act."  *Castillo v. Albert Einstein Coll. of Med., Inc.*, 2025 WL 692124, at *3 (S.D.N.Y. March 4, 2025) (quoting 29 C.F.R. § 791.2(a)).

*Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "[A] company owner, president, or stockholder must have at least some degree of involvement in the way the company interacts with employees to be a FLSA 'employer.'" *Id.* at 107. The Second Circuit requires that a plaintiff show that the defendant has had "some degree of individual involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." *Id.* at 109. The evidence is undisputed that Pablo and Raul, not Rigoberto, played a major part in hiring Veronica and Gael, setting their work schedules, establishing their pay, and terminating their employment. Dkt. No. 58-8 at 16:4–17:24, 22:8–17; Dkt. No. 58-9 at 19:5–17, 24:13–25:3. Rigoberto delegated to Pablo the operational management of R&P Pizza. Dkt. No. 53-2 at 89:21–90:1. In fact, the evidence is uncontradicted that Rigoberto rarely visited the restaurant and that on the few occasions he did, it was to repair equipment. Dkt. No. 63 ¶ 6; Dkt. No. 58-8 at 13:15–14:11; Dkt. No. 58-5 ¶ 3; Dkt. No. 58-9 at 17:22–18:12; Dkt. No. 53-1 at 48:22–25; Dkt. No. 53-2 at 30:4–11.

At the same time, however, "[n]othing . . . in the FLSA itself requires an individual to have been personally complicit in FLSA violations." *Irizarry*, 722 F.3d at 110. "A person who exercises operational control over a business, including with respect to the conditions of employment . . . cannot insulate himself from liability by inserting a manager into his relationship with an employee." *Ramen-Ya*, 2021 WL 3540671, at *6. Indeed, other courts have found FLSA liability even where a Defendant has "delegated managerial power," but still (maybe even only "once or twice a month") stops by to "make sure that things are operating correctly." *Grande v. 48 Rockefeller Corp.*, 2023 WL 5162418, at *19 (S.D.N.Y. Aug. 11, 2023); *see also Jindan Wu v. Nat. Tofu Rest. Corp.*, 2018 WL 1009274, at *11 (E.D.N.Y. Feb. 20, 2018) (finding a genuine

dispute of material fact where alleged employer had 50% ownership in the company, was its registered agent, signed company checks, and "spen[t] time" at the restaurant).

Plaintiffs have identified evidence giving rise to a genuine issue of fact regarding whether Rigoberto was an employer. Rigoberto was a signatory on the corporate bank account and was the only person to write checks on behalf of R&P Pizza. Dkt. No. 60 ¶ 32; Dkt. No. 53-2 at 29:9–13, 70:6–8; Dkt. No. 53-1 at 68:7–12. He thus "exercised financial control over the company." *Irizarry*, 722 F.3d at 106 (quoting *Herman*, 172 F.3d at 136). He also monitored the financial health of the company, including the pay that it provided to employees, through "daily sheets" containing records of business sales and expenses that were provided to him and that he kept at his office. Dkt. No. 53-2 at 54:8–19, 86:22–87:6, 95:8–16. The daily sheets can give rise to an inference that Rigoberto played a much more integral role in the management of R&P Pizza than that to which he testified. The sheets were sent to him daily and contain details for every day of revenue received by R&P Pizza, including the cash count, the inventory payments, and the payroll by name of the employee and the amount the employee was paid. Dkt. Nos. 53-11, 53-24, 53-28, 53-29, 53-30, 53-31, 53-32, 53-33. The inference thus plainly arises that the reason they were sent to him was so that he could intervene and manage when necessary.

Rigoberto also provided the relevant information to the accountants to prepare R&P Pizza's tax returns and the W-2 statements. Dkt. No. 53-3 at 41:6–12. Tellingly, when there were issues regarding the employment performance of Veronica and Gael, he interceded and convened a meeting with Raul, Gael, and Pablo, exhibiting both his operational control and involvement. *Id.* at 127:7–21. When Veronica and Gael left R&P Pizza, Rigoberto was involved in the hiring of Veronica's replacement. *Id.* at 121:10–15. There is evidence from which the jury could infer that he helped place Pablo—his nephew who was less experienced in the pizza business—in his

11

position of managerial control, and that it was as a result of his confidence in Pablo and his supervision of Pablo that Pablo stayed in control.  Dkt. No. 58-5 ¶¶ 4–7; Dkt. No. 53-2 at 29:7–17 (indicating that when asked, "Do you decide not to go there because you feel like Pablo has everything under control?" Rigoberto answered, "Correct."); *id.* at 89:21–90:3 (Rigoberto explaining that he "delegate[d]" some responsibilities to Pablo); *see Irizarry*, 722 F.3d at 116 (including "the hiring of managerial employees" as a sign that someone is an employer).  This evidence goes beyond the fact that Rigoberto was a part-owner of the restaurant who visited it occasionally and sometimes signed employee paychecks.

The Court cannot resolve on the summary judgment record whether those facts are sufficient to overcome Rigoberto's lack of involvement in the immediate employment decisions and under the totality of circumstances to make Rigoberto an employer.  *See Mangahas*, 754 F. Supp. 3d at 494 (where there are "warring accounts of [Defendant's] role and authority," the issue is one of "material fact" meant for a jury.)

## II.    Plaintiffs Are Entitled to Summary Judgment on Their Overtime Claims.

FLSA "require[s] an employer to pay an overtime wage of one and one-half times the regular rate for each hour worked in excess of forty per work week." 29 U.S.C. § 207(a)(1); *Inclan v. New York Hosp. Grp.*, 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015).  "Under the FLSA, an employee's overtime rate is calculated with reference to the minimum wage to which he was legally entitled."  *Khan v. AC Auto., Inc.*, 2021 WL 2036706, at *3 (S.D.N.Y. May 21, 2021). "The NYLL largely adopts the same standard as the FLSA with respect to overtime compensation[.]"  *Fermin*, 93 F.Supp.3d at 43; *see* NYLL §§ 142-2.2, 146-1.4.

Analysis of an overtime claim under FLSA and the NYLL proceeds in two steps.  In the first step, the plaintiff must "prove that [they] in fact performed work for which [they were] improperly compensated," which the plaintiff can do by offering "sufficient evidence to show the

amount and extent of that work as a matter of just and reasonable inference." *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 252 (S.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *27 (S.D.N.Y. June 9, 2016)).  Where an employer fails to maintain accurate records on which they could rely, a plaintiff can "submit evidence from which violations of the NYLL and damages may be reasonably inferred." *Cardenas v. Edita's Bar & Rest.*, 2021 WL 4480570, at *9 (E.D.N.Y. Sept. 30, 2021) (citing *Chichinadze.*, 517 F. Supp. 3d at 252).  After a plaintiff satisfies this burden, at the second step the "burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946); see *Teofilo v. Real Thai Cuisine Inc.*, 2021 WL 22716, at *3 (S.D.N.Y. Jan. 4, 2021); *Chichinadze*, 517 F. Supp. 3d at 255 (explaining that under the NYLL, the burden on the employer is somewhat stricter and "Defendants cannot discharge [their] burden merely by 'undermining the reasonableness' of Plaintiff's evidence that she was unpaid").

There is no dispute that Plaintiffs were not paid at an overtime rate when they worked more than forty hours in a week.  Both Plaintiffs swear that they were paid only at their regular hourly rate when they worked more than forty hours a week.  Dkt. No. 53-3 ¶ 14 (Veronica); Dkt. No. 53-4 ¶ 16 (Gael); *see also* Dkt. Nos. 53-8 (Gael time logs of hours worked and net pay), 53-21 (spreadsheet showing effective rate of pay per hours worked for Gael), 53-6 (Veronica time logs of hours worked and net pay), 53-22 (spreadsheet summarizing effective rate of pay per hours worked for Veronica).  And Pablo confirmed as much in his deposition.  *See* Dkt. No. 53-1 at

120:19–121:3 (responding to question asking if work above forty hours per week was paid at the "regular rate of pay" rather than at overtime rates with the answer, "Yes, right.").

Defendants argue that the Court should not grant summary judgment to Plaintiffs. They state in their opposition to summary judgment that Plaintiffs were "compensated for all hours worked, including overtime, at their regular rate of pay." Dkt. No. 58 at 9. Defendants point also to the same deposition testimony of Pablo referenced above. But their briefing and Pablo's testimony are unresponsive to the question of overtime pay, and actually support Plaintiffs' claims. Pablo testified that when Plaintiffs worked for fifty hours, they were paid for fifty hours at their regular rate of pay. Dkt. No. 53-1 at 120:19–121:3. In other words, Pablo confirmed that Plaintiffs were not paid at the required time-and-a-half rate for hours worked in a week in excess of forty.

Defendants also argue that Raul was responsible for assigning extra hours to his family and would sometimes communicate those verbally to Pablo. Dkt. No. 58 at 9. Assuming (as the Court must on this motion for summary judgment) that it was Raul and not Pablo that assigned Plaintiffs the hours in excess of forty, that might make Raul also an employer who is jointly and severally responsible for FLSA and NYLL violations. *See Fermin v. Las Delicias Peruanas Rest.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015). It would not relieve Defendants of responsibility under FLSA and the NYLL. A defendant is liable for overtime pay under FLSA and the NYLL so long as he knows of the hours in excess of forty, and Defendants here do not dispute that they knew that there were times that Plaintiffs worked more than forty hours in a week.

Finally, while, as Defendants note, the record evidence demonstrates that Plaintiffs did not work more than forty hours a week every week, Dkt. Nos. 53-21, 53-22, it is sufficient that there were weeks where they worked more than forty hours without being paid overtime. The law "require[s] an employer to pay an overtime wage of one and one-half times the regular rate for

each hour worked in excess of forty per work week," regardless of whether that occurred on only some weeks and not on others.  29 U.S.C. § 207(a)(1).  The dispute as to the precise amount of Plaintiffs' uncompensated work is one of fact for trial.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 364 (2d Cir. 2011); *see also Baquiax v. Abasushi Fusion Cuisine, Inc.*, 2023 WL 2647450, at *6 (S.D.N.Y. Mar. 27, 2023).

III.    **Plaintiffs Are Entitled to Summary Judgment on Their Minimum Wage Claims.**

FLSA and the NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works.  29 U.S.C. § 206; NYLL § 652.  FLSA requires employers to pay employees the higher of the federal minimum wage, 29 U.S.C. § 206, and the state minimum wage, *id.* § 218(a), for every hour worked.  The standards for establishing employer liability for FLSA and NYLL overtime claims also apply to minimum wage claims:  "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  *Zambrano v. Envios Espinoza, Inc.*, 2025 WL 1808694, at *8–9 (E.D.N.Y. July 1, 2025) (citation omitted).  The standards are the same under both statutes.  *See id.*

The New York City minimum wage for employers with fewer than eleven employees was $12 an hour in 2018, $13.50 in 2019, and $15 an hour from 2020 through 2023.  *See* History of the Minimum Wage in New York State, New York State Department of Labor, https://dol.ny.gov/history-minimum-wage-new-york-state.[3]

Plaintiffs offer evidence that Veronica was paid $11 an hour from July 2018 to March 2019, $12 an hour from April 2019 to May 2020, $14 an hour from May 2020 to June 2022, and $15 an hour from July 2022 to October 2023.  That evidence comes in two forms.  First, Veronica

_____

[3] It is undisputed that R&P Pizza had fewer than 11 employees and thus qualified as a small employer for the purposes of New York minimum wage.  *See* Dkt. No. 53 at 4.

testified at her deposition and in her declaration that she was paid $11 dollars an hour upon starting at R&P Pizza in mid-2018, and that her pay rate increased over the course of her time working there to $13 at some point and finally to $15 dollars an hour. Dkt. No. 53-3 ¶¶ 5, 10, 13; Dkt. No. 58-8 at 17:12–14, 43:16–44:3, 53:14–16). It also comes in the form of the time logs that Veronica was given by Pablo at the end of each week that recorded the number of hours she worked during the week and the pay that she received. Dkt. Nos. 53-6, 53-22. Those documents reflect that Veronica was paid $11 an hour from July 2018 to March 2019, $12 an hour from March 2019 to May 2020, $14 an hour from May 2020 to July 17, 2022, and $15 an hour thereafter. Dkt. No. 53-22. Thus, the only time Veronica's hourly rate was at or above minimum wage was from July 2022 to October 2023 when she was paid $15 an hour.

Plaintiffs offer similar evidence for Gael's hourly pay. He testified to being paid $12 an hour when he first started working for R&P Pizza, and that he received pay increases to $14 an hour and $15 an hour. Dkt. No. 53-4 ¶¶ 5–7, 10, 15; Dkt. No. 58-9 at 25:22–25, 36:21–23, 37:11–19. And like Veronica, Gael's time logs and associated pay offer further evidence that he was paid $12 an hour from August 2021 to July 3, 2022, $14 an hour from July 4, 2022, to November 6, 2022, and $15 an hour from November 2022 forward. Dkt. Nos. 53-8, 53-21. The only time Gael's hourly rate was at or above minimum wage was from November 2022 to October 2023.

Defendants' only response is to point to Pablo's deposition in which he stated that Veronica and Gael were paid the minimum wage, Dkt. No. 58-3 at 70:14–70:22, which he claims he verified by checking the minimum wage for small companies on the internet, *id.* at 70:23–71:4. Defendants cannot create a genuine issue of material fact by "rely[ing] on conclusory allegations;" to defend against summary judgment they must provide "specific facts indicating that a genuine factual issue exists." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citation omitted). Courts have

16

recognized that such "bald assertions and legal conclusions" do not create a genuine issue of material fact juxtaposed against specific record evidence like that provided by plaintiffs. *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997); *see also Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc.*, 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017). It may well be that Defendants believed they were paying Plaintiffs the minimum wage, but willfulness goes to the immaterial issue here of the statute of limitations under FLSA. 29 U.S.C. § 255(a); *see also Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("The FLSA has a two-year statute of limitations except in the case of willful violations, where the statute of limitations is three years," and "where willfulness is disputed, the court applies a three-year statute of limitations"). The absence of willfulness cannot excuse a NYLL minimum wage violation, for which the statute of limitations is six years. NYLL § 198(3); *see also Villegas v. Monica Rest. Corp.*, 2013 WL 4046261, at *3 (E.D.N.Y. Aug. 8, 2023).[4] As with Plaintiffs' overtime claims, the question of damages is one for trial.

## IV.    Plaintiffs Are Entitled to Summary Judgment on Their Spread of Hours Claims.

"Under NYLL §§ 650 et seq. and its supporting regulations, [NYLL] § 142-2.4, an employer must pay an employee an additional hour's pay at minimum wage for each day the employee works a shift lasting more than 10 hours from the start of the shift to its end." *Rodriguez v. New Generation Hardware Store Corp.*, 2023 WL 1516908, at *4 (S.D.N.Y. Feb. 3, 2023).

---

[4] A plaintiff cannot recover under both FLSA and the NYLL. "If a plaintiff is entitled to damages under both federal and state wage law, the Court has the discretion to award that plaintiff damages under the statute providing the greatest amount of relief." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017). The NYLL's six-year statute of limitations is therefore operative here. *See Jrpac*, 2016 WL 3248493, at *31 (awarding plaintiffs damages under the NYLL instead of FLSA because the NYLL's longer statute of limitations meant that "[p]laintiffs' damages award under the NYLL necessarily . . . subsume[d] their award under the FLSA")

Defendants do not contest that Plaintiffs did not receive "spread of hours" pay when they worked a span of more than ten hours in a day. Citing Plaintiffs' time records, they dispute only the frequency with which Plaintiffs' workdays exceeded ten hours. Dkt. No. 58 at 9; Dkt. No. 60 ¶ 20. But the frequency at which Defendants violated the law is immaterial to whether or not there was a violation, and goes only to damages. Defendants' failure to pay Plaintiffs spread of hours pay is confirmed by the other record evidence. Dkt. No. 53-3 ¶ 15; Dkt. No. 53-4 ¶ 17; *see also* Dkt. No. 53-1 at 121:4–122:6 (Pablo answering "no" when asked if he ever paid Plaintiffs "extra" for "working more than ten hours in a day"); Dkt. No. 53-2 at 88:16–89:15 (Rigoberto explaining the same). Given the lack of genuine dispute, Plaintiffs are entitled to summary judgment on their spread of hours claim. *See Alonso Vazquez v. Azoulay*, 834 F. App'x 653, 654 (2d Cir. 2021) (summary order); *Ramen-Ya Inc.*, 2021 WL 3540671, at *19.

The damages for Plaintiffs' spread of hours claim may be calculated by multiplying the number of days that the employee worked in excess of ten hours by the statutory minimum wage for the relevant period. *See, e.g.*, *Anzurez v. La Unica Caridad Inc.*, 2021 WL 2909521, at *5 (S.D.N.Y. July 12, 2021). As noted, Plaintiffs and Defendants here contest the number of weeks in which Plaintiffs worked more than ten hours in any given day. In light of the dispute, the question of damages is one for trial.

## V.    Plaintiffs Are Not Entitled to Summary Judgment on Their Wage Notice and Wage Statement Claims.

The New York State Wage Theft Prevention Act ("WTPA") requires employers to provide two different forms of notices to employees relevant to this litigation. First, employers are required to provide "at the time of hiring" a "notice containing" the employee's rate of pay, the regular pay day, and the contact information of the employer. NYLL § 195(1). Second, the law also requires the employer to "furnish each employee with a statement with every payment of wages" that states

the employer's information along with the rate of pay and any allowances or deductions. *Id.* §

195(3); *see Canelas v. A'Mangiare Inc.*, 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015). These

wages notice requirements "are intended to assist employees seeking to vindicate their rights and

ensure they receive accurate and lawful pay." *Mangahas*, 754 F. Supp. 3d at 506. Where an

employer does not provide the required notice when the employees are hired, the employees are

entitled pursuant to NYLL § 198(1-b) to recover "damages of fifty dollars for each work day that

the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."

Violations of Section 195(3) permit the employee to recover "$250 for each workday the violations

occurred not to exceed $5,000, with costs and reasonable attorney's fees." NYLL § 198(1-d).

Both Veronica and Gael aver that they did not receive a notice at the time they were hired

or at any time thereafter. Dkt. No. 53-3 ¶ 16; Dkt. No. 53-4 ¶ 18. In addition, Pablo testified that

R&P Pizza provided only a "verbal[]" notice of the pay of the Plaintiffs, and did not provide

individual forms. Dkt. No. 53-1 at 27:12–18, 109:22–110:7, 118:18–21. Defendants also do not

dispute that Plaintiffs were not issued pay stubs, except a single paystub provided to Gael when he

requested one for proof of employment. Dkt. No. 60 ¶¶ 10, 12.[5]

Defendants dispute that they violated the WTPA and state that Pablo informed Vernoica

about her rate of pay when she received a raise and that Raul decided Plaintiffs' rate of pay. *Id.* ¶

21; *see also* Dkt. No. 53-1 at 69:6–14, 109:22–110:7. Those arguments are not responsive to

Plaintiffs' claims. Section 195(1) requires that an employee be provided a wage notice at the time

of hiring "in writing in English and in the language identified by each employee as the primary

---

[5] Defendants dispute whether the amount reflected on that single paystub issued to Gael was correct or not, *see* Dkt. No. 60 ¶ 12, but that is immaterial because the statutory maximum damages is reached after twenty days of violations. NYLL § 198(1-d). It is uncontested that Gael worked far more than twenty days at R&P Pizza, and received a pay notice on only one of those days. Dkt. No. 60 ¶ 2.

language of such employee." NYLL § 195(1). And Section 195(3) requires that each employee be provided "a statement with every payment of wages." NYLL § 195(3). "The requirements in Section 195(3) are therefore applied strictly and '[w]age statements must . . . contain all data identified by NYLL § 195(3).'" *Mangahas*, 754 F. Supp. 3d at 506 (quoting *Ametepe v. Peak Time Parking, Corp.*, 2021 WL 1172669, at *7 (S.D.N.Y. Mar. 29, 2021)). That Vernonica may have been told her rate of pay when she received a raise satisfies neither Section 195(1) nor 195(3). Similarly, it is immaterial for purposes of employer liability *who* informed Plaintiffs of their rate of pay—if Plaintiffs were not informed in writing of their pay, the statute was violated.

Defendants further oppose Plaintiffs' motion for summary judgment under the WTPA by arguing that Plaintiffs do not have standing to pursue the claims. *See* Dkt. No. 58 at 9–10. The traditional formulation of Article III standing is well known. A plaintiff seeking to invoke the jurisdiction of the federal courts must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)). In the last decade, the Supreme Court has clarified further that the injury in fact requirement is not "automatically satisfied" "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 426 (quoting *Spokeo v. Robbins*, 578 U.S. 330, 341 (2016)). That distinction rests on the "important difference" between "(i) a plaintiff's statutory cause of action to sue a defendant," and "(ii) a plaintiff's suffering of concrete harm." *TransUnion*, 594 U.S. at 426–427.

In *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024), the Second Circuit held that standing cannot arise solely from the fact that the WPTA "grants a person a statutory right and

purports to authorize that person to sue to vindicate that right." *Id.* at 305 (citing *TransUnion*, 594 U.S. at 426). Instead, to satisfy the requirements of Article III standing, a plaintiff must "show some causal connection between the lack of accurate notices and [a] downstream harm," such as an impaired ability to seek relief for wage violations about which they may not have information or a lack of proper documentation to apply for public benefits. *Id.* at 308–09. In other words, a plaintiff cannot invoke the Court's Article III jurisdiction by pointing only to "technical violations of the [NYLL]." *Id.* at 305. The court was careful to note that district courts should not "impose[] too high a burden on plaintiffs-employees in § 195 cases," and that a plaintiff "who has plausibly shown that defective notices led him or her to lose wages" has done enough. *Id.* at 310. Following *Guthrie*, courts in this Circuit "are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (quoting *Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, 2024 WL 4652251, at *2 (W.D.N.Y. Nov. 1, 2024), *appeal dismissed*, 2024 WL 5445327 (2d Cir. Dec. 27, 2024))*; see also Cortez v. Brand Name 99 Cents & Up Corp.*, 2025 WL 1251297, at *5–6 (S.D.N.Y. Apr. 30, 2025).

Plaintiffs argue that they "were harmed by the lack of notice in that they were effectively denied the opportunity to accurately calculate and check that the wages they were being paid were lawful." Dkt. No. 53 at 5. "[T]o demonstrate his entitlement to summary judgment . . . the plaintiff must set forth by affidavit or other evidence specific facts showing that there is no genuine dispute as to facts that attest to his standing." *Lugo v. City of Troy*, 114 F.4th 80, 88 (2d Cir. 2024). Plaintiffs have submitted no additional evidence to support their standing. Whether Gael has

standing to pursue this claim is an outstanding material fact to be ascertained at trial.  Accordingly, the Court denies summary judgment to Plaintiffs on the WTPA claims.  *See Wood v. Mike Bloomberg. 2020, Inc*, 2025 WL 1002058, at *14 (S.D.N.Y. Mar. 31, 2025); *Rosario*, 2025 WL 486636 at *4; *Lock*, 2024 WL 4728594, at *5; *Martinenko v. 212 Steakhouse, Inc.*, 2024 WL 4275286, at *9 (S.D.N.Y. Sept. 24, 2024); *Villada v. Grand Canyon Diner*, 2024 WL 3875778, at *10 (E.D.N.Y. Aug. 19, 2024) (where Plaintiff "merely alleges that the Defendants failed to comply with these statutory mandates," they have not established standing); *Vera v. The 6 Grp.*, 2025 WL 405816, at *8 (E.D.N.Y. Feb. 5, 2025).

## VI.    Plaintiffs Are Entitled to Summary Judgment on Their Frequency of Pay Claims.

Plaintiffs move for summary judgment on their frequency of pay claims.  Under New York law, employers are required to pay every "manual worker" "weekly and not later than seven calendar days after the end of the week in which the wages are earned."  NYLL § 191(1)(a). Plaintiffs argue that they are entitled to liquidated damages under NYLL § 198(1-a), which permits an employee to "recover the full amount of any underpayment."[6]

As a pure question of state law, the Court is "bound . . . to apply the law as interpreted by New York's intermediate appellate courts . . . unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).  In this case, the First and Second Departments of the Appellate Division have reached different conclusions as to whether a private right of action exists under Section 198 to enforce the frequency of payment requirements in Section 191.  *See Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286 (1st Dep't

---

[6] In their complaint, Plaintiffs included also a claim for frequency of pay under the FSLA. Dkt. No. 1 ¶ 48.  They do not mention the FLSA claims in their motion for summary judgment.  The Court, like Plaintiffs, accordingly addresses only the NYLL claims.

2019); *Grant v. Glob. Aircraft Dispatch, Inc.,* 204 N.Y.S.3d 117 (2d Dep't 2024).  In such a posture, this court must "undertake the imprecise but necessary task of predicting on a reasonable basis how the New York Court of Appeals would rule if squarely confronted with the issue." *DiBella v. Hopkins*, 403 F.3d 102, 111–112 (2d Cir. 2005); *Michalski v. Home Depot*, 225 F.3d 113, 116–117 (2d Cir. 2000) (stating that a federal court must predict how the New York Court of Appeals would rule in the face of a split in the departments of the Appellate Division).

In *Vega*, the First Department held that Section 198(1-a) creates a private right of action for violations of Section 191, and that an employee can sue an employer for failure to pay weekly wages as required even where the employer ultimately, but belatedly, pays the required wages. 107 N.Y.S.3d at 288.  The court's reasoning turned in large part on its understanding that "underpayment" as used in Section 198 means "to pay less than what is normally required."  *Id.* It followed, the court held, that "[t]he moment that an employer fails to pay wages in compliance with section 191(1), the employer pays less than what is required."  *Id.*  That court looked also to the U.S. Supreme Court's interpretation of the liquidated damages provision in FLSA, where the Supreme Court held that "regardless of whether an employee has been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the 'failure to pay the statutory minimum on time,' in order to provide 'compensation for the retention of workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.'"  *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).  Although FLSA and NYLL liquidated damages provisions are "not identical," there is no "meaningful difference."  *Id.* (quoting *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018)).  In the alternative, the First Department determined that even if Section 198 "does not expressly authorize

a private action . . . a remedy may be implied since plaintiff is one of the class for whose particular benefit the statute was enacted." *Id.* at 289.

In *Grant*, the Second Department "disagree[d]" with *Vega*'s holding on the grounds that "[t]he plain language of Labor Law§ 198(1-a) supports the conclusion that the statute is addressed to nonpayment and underpayment of wages, as distinct from the frequency of payment, and we do not agree that the payment of full wages on the regular biweekly payday constitutes nonpayment or underpayment." 204 N.Y.S.3d at 122. The court in *Grant* continued by explaining that where there is an "agreement between the employer and employee" as to when payment will occur, the fact that payment may not be every seven days "is not equivalent, in our view, with nonpayment or underpayment of wages subject to collection with the additional assessment of liquidated damages." *Id.* at 123. The *Grant* court relied on the New York Court of Appeal's recent decision in *Konkur v. Utica Academy of Science Charter School*, 185 N.E.3d 483 (N.Y. 2022), in which the Court of Appeals concluded that a violation of the NYLL anti-kickback statute was not a "wage claim" within the meaning of Section 198(1-a), even though it had the effect of reducing an employee's wages. 204 N.Y.S. 3d at 123–124. The Second Department looked also to legislative history, which suggested that the statute was aimed at "remedying employers' failure to pay the amount of wages required by contract or law." *Id.* at 124. The Second Department separately rejected the *Vega* court's alternative holding that a cause of action should be implied, as there exist "multiple official enforcement mechanisms for violations of Labor Law § 191." *Id.* at 125. Justice Christopher dissented from the Second Department's ruling. *Id.*

Several district courts in this circuit have since considered the question of whether *Vega* or *Grant* is a better indicator of how the Court of Appeals might rule on the question of whether there is a private right of action for damages when an employer does not pay their employee every seven

days.  Most have continued to follow *Vega.  See Espinal v. Sephora USA, Inc.*, 2024 WL 4241537 (S.D.N.Y. Sept. 19, 2024) (Engelmeyer, J.); *Charles et al. v. Aritzia*, , 2024 WL 4167502, at *5 (S.D.N.Y. Sept. 12, 2024) (Garnett, J.); *Bryant v. Buffalo Exch., Ltd.*, 2024 WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024) (Subramanian, J.); *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL 815253, at *5–6 (S.D.N.Y. Feb. 27, 2024) (Karas, J.); *Zachary v. BG Retail LLC*, 2024 WL 554174, at *5 (S.D.N.Y. Feb. 12, 2024) (Briccetti, J.); *Sarmiento v. Flagge Contracting Inc.*, 2024 WL 806137, at *9–10 (S.D.N.Y. Feb. 27, 2024) (Cott, M.J.), report and recommendation adopted, 2024 WL 1908607, at *1 (S.D.N.Y. May 1, 2024) (Broderick, J.); *Birthwright v. Advance Stores Co., Inc.*, 2024 WL 3202973, at *1 (E.D.N.Y. June 27, 2024) (Brown, J.); *Levy v. Endeavor Air Inc.*, 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024) (Vitaliano, J.); *Garcia v. Skechers USA Retail, LLC*, 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024) (Chen, J.); *Covington v. Childtime Childcare, Inc.*, 2024 WL 2923702, at *5 (N.D.N.Y. June 10, 2024) (Sannes, C.J.); *Bazinett v. Pregis LLC*, 2024 WL 1116287, at *6 (N.D.N.Y. Mar. 14, 2024) (D'Agostino, J.); *Phoenix v. Cushman & Wakefield U.S., Inc.*, 2025 WL 357793, at *5 (S.D.N.Y. Jan. 31, 2025); etc.  Just one case has held that *Grant* presents the better reading of section 198(1-a).  *See Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170, 185 (W.D.N.Y. 2024).  This Court finds the reasoning of the many decisions to have found that *Vega* continues to apply instructive.  The opinions of Judge Engelmayer in *Espinal* and Judge Subramanian in *Bryant* are particularly helpful.

As in these many cases, the Court takes the text of the NYLL Section 198(1-a) as its starting point.  Section 198(1-a) expressly authorizes the Commissioner to sue "on behalf of any employee."  The statute does not, in so many words, expressly authorize an employee to sue.  But it contemplates suit by both the Commissioner and an employee when it goes on to state:

> In any action instituted in the courts upon a wage claim by an employee or the
> commissioner in which the employee prevails, the court shall allow such employee

> to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due . . .

*Id.* Courts have treated Section 198(1-a) as providing an express cause of action for "wage claims" under Article 6. *See, e.g.*, *Vega*, 107 N.Y.S.3d at 288. There is no dispute that a late payment is a "wage claim." The critical question is whether "a late payment counts as an underpayment," such that in the absence of proof of good faith by the employer, the employee is entitled to liquidated damages. *See Bryant*, 2024 WL 3675948, at *4.

"Considered in a vacuum," the argument that late payments are not underpayments would have "some force." *Espinal*, 2024 WL 4241537, at *4. Measured as of the moment that the employee brings suit, he arguably has not been underpaid. Put otherwise, "it is not clear that there are any 'wages' that can be 'found to be due.'" *Id.* (citation omitted).

But as the Court in *Vega* recognized, the NYLL pay frequency statute does not exist in a vacuum, as the similar right guaranteed by FSLA as interpreted by the federal courts serves as a helpful guide. "While the wording of the FLSA and NYLL liquidated damages are not identical, there are no meaningful differences." *Rana*, 887 F.3d at 123. Section 216 of FLSA states that "[a]ny employer who violates [FLSA's minimum-wage and overtime-compensation requirements] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "[T]he Supreme Court has interpreted § 216 to empower employees to do just what Plaintiffs say they can do here: recover liquidated damages equal to the amount of wages that were paid late." *Bryant*, 2024 WL 3675948, at *4 (citing *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55–57 (2d Cir. 1998)); *see also O'Neil*, 324 U.S. at 707 (noting

26

that FLSA's liquidated damages provision "constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being").

Constructing the NYLL in line with FLSA comports too with the principle adopted by the New York Court of Appeals that when statutory language is "obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *CNH Diversified Opportunities Master Acct., L.P. v. Cleveland Unlimited, Inc.*, 160 N.E.3d 667, 673 (N.Y. 2020) (citation omitted). Section 198(1-a), added in 1967, "obviously transplanted" language from § 216(b) of FLSA. *See Rana*, 887 F.3d at 123 ("[I]t is clear that the New York State legislature rewrote its liquidated damages provision to cover the same ground as the FLSA[.]"); *Gottlieb v. Kenneth D. Laub & Co.*, 626 N.E.2d 29, 32 (N.Y. 1993). "The courts that have found a private right of action under the NYLL, such as the First Department in *Vega*, have noted the New York Legislature's intention that its remedial provisions provide at least equal protection to workers as those as of the FLSA." *Espinal*, 2024 WL 4241537, at *6 (collecting cases). That is particularly so given there is "no evidence—textual or otherwise—that . . . the New York legislature intended to depart from the FLSA in its treatment of such claims." *Id.* To the contrary, the construction of the NYLL adopted by this Court effectuates the history and purpose of the NYLL, which was enacted to "strengthen and clarify the rights of employees and the payment of wages." *Truelove v. Ne. Cap. & Advisory, Inc.*, 95 N.Y.2d 220, 223 (2000).[7]

---

[7] Having determined that Section 198(a-1) includes an express private right of action, the Court need not reach the *Vega* court's alternative holding that a private right of action is implied.

Having established that Plaintiffs possess a cause of action here to pursue their frequency of pay claims, they are entitled to summary judgment. The spreadsheets attached by Plaintiffs to their motion for summary judgment (which summarize the daily sheets, time ledgers, and payroll for Veronica and Gael) unambiguously demonstrate that they were paid at irregular intervals. Dkt. Nos. 53-17, 53-18. Defendants dispute the allegation but point only to deposition testimony by Pablo in which he responds "yes" when asked if Gael would "receive" his pay "each week," and that Veronica was "supposed to be paid" "every week." Dkt. No. 53-1 at 80:3–6, 108:17–20. That Veronica was "supposed" to be paid every week is unresponsive. And Pablo's conclusory one-word response to a question does not create a genuine issue of material fact juxtaposed against the timesheets and payroll as tabulated by Plaintiffs. *Scotto*, 143 F.3d at 114. If there is any evidence that Plaintiffs were paid more frequently or on different intervals than what is reflected by R&P Pizza's own internal documentation as attached to Plaintiffs' motion for summary judgment, Defendants have not provided it. The precise amount of liquidated damages, however, will be determined at trial.

## VII.    Plaintiffs Are Not Entitled to Summary Judgment on Their Section 7434(a) Claim.

Finally, Plaintiff Gael argues that Rigoberto and R&P Pizza are both liable for R&P's tax code violations. Dkt. No. 54 at 8. Section 7434(a) of Title 26 of the United States Code provides a private right of action for a plaintiff to sue any person who "willfully files a fraudulent information return with respect to payments purported to be made" to the Plaintiff. The term "information return" is defined by the statute to include W-2 forms. *Id.* § 6724(d)(1). To succeed on a Section 7434 claim, a plaintiff must show that "(1) the defendant issued an information return; (2) the information was fraudulent; and (3) the defendant willfully issued the fraudulent information return." *Munn v. APF Mgmt. Co.*, 2020 WL 7264471, at *4 (S.D.N.Y. Dec. 10, 2020). The statute "provides a cause of action only to a person *to whom payments were purportedly made*

according to the fraudulent information return." *Id.* (emphasis in original) (quoting *Pacheco v. Chickpea at 14th St. Inc.*, 2019 WL 2292641, at *4 (S.D.N.Y. May 30, 2019)).  Upon a violation of the statute, "defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of" actual damages, the cost of the action, and reasonable attorney's fees.  26 U.S.C. § 7434(b).

Defendants do not dispute that the two W-2s issued to Gael during his employment did "not include the money that Gael was paid in cash," and were therefore incorrect.  Dkt. No. 60 ¶ 23.  But they do dispute that the W-2s were issued by Rigoberto and maintain that they were issued instead by corporate defendant R&P Pizza alone.  *Id.* ¶ 22.  They point primarily to the fact that Rigoberto's name appears nowhere on the actual W-2 forms.  *Id.*  Defendants do not contest that R&P Pizza, if it willfully filed a fraudulent information return, would be liable under the statute.

The statute is clear that it runs against the "person" who filed the allegedly fraudulent return, 26 U.S.C. § 7434(a), and the Internal Revenue Code defines "person" to include companies and corporations, *id.* § 7701(a)(1).  R&P Pizza, as Gael's employer, was the entity required to file the informational return under federal law.  *Id.* § 6051.  Gael's W-2s confirm as well that R&P Pizza is his employer.  Dkt. No. 53-12.  Rigoberto, on the other hand, was not required by law to file a W-2 on Gael's behalf; nor does his name appear anywhere on the actual W-2s that were filed.  At most, then, Rigoberto aided in the filing of the W-2 or caused it to be filed.  Whether someone so situated can be liable under Section 7434 is an open question in this Circuit.

District courts to address the question have split on which participants may be held liable under Section 7434.  The statute's text refers to "any person" who "willfully files a fraudulent information return."  26 U.S.C. § 7434(a).  Some courts "have limited liability to the person who was required to file the information return under federal law."  *Czerw v. Lafayette Storage &*

*Moving Co.*, 2018 WL 5859525, at *2 (W.D.N.Y. Nov. 9, 2018) (collecting citations). Other courts have "rejected that narrow reading, concluding that a person who causes a fraudulent return to be filed, whether on his own behalf or on behalf of another, may be liable under § 7434." *Id.* (collecting cases).

The former camp has the better of this argument. Starting, as the Court must, "with the language of the statute itself," *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989), Section 7434 applies to "any person" who "files" a fraudulent information return. It does not by its terms apply to those who aided and abetted that filing, or who otherwise caused the filing. And under the statute, a civil action can be commenced only "against the person so filing such return." 26 U.S.C. § 7434. So understood, "any person" as used by the statute does not broaden the class against which the statute may be applied beyond "filers"; it denotes only that the "filer" could be "any person." Where a statute's text clearly "does not itself reach those who aid and abet" a violation, to nevertheless read in a cause of action against aiders and abettors would "extend liability beyond the scope of conduct prohibited by the statutory text." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994). Federal courts are not permitted to "amend the statute to create liability for acts that are not themselves . . . within the meaning of the statute." *Id.* at 177–178. This rule of construction is strengthened too by the fact that the common law of tort for aiding and abetting "has been at best uncertain in application," and that courts should be particularly careful to apply it in light of the fact that "Congress has not enacted a general civil aiding and abetting statute . . . for suits by private parties" as it has in the criminal context. *Id.* at 182. It is therefore "not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose [] aiding and abetting liability." *Id.* at 185.

The reasoning the Supreme Court applied to Section 10(b) of the Securities Exchange Act in *Central Bank of Denver* also applies here. The plain text of Section 7434 applies only to the "filer," and does not extend liability to those who aid and abet the filer. In addition, Congress has created aider and abettor liability within the Internal Revenue Code where it wishes that liability to apply. Section 6701 of Title 26 of the United States Code permits the Internal Revenue Service to impose a financial penalty on "any person who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document." That statute applies only to suits initiated by the IRS, and does not apply to private suits brought by third parties. The subchapter of the Code for "Proceedings by Taxpayers and Third Parties," in which Section 7434 is located, contains no analogous aiding and abetting provision. *See* 26 U.S.C. §§ 7421–7437. This understanding comports with the Supreme Court's decision in *Central Bank*, which distinguished suits by private parties under 10b-5, for which there was no aiding and abetting liability, from "various provisions of the securities laws [that] prohibit aiding and abetting" where the actions are "brought by the SEC." 511 U.S. at 183. If Congress had intended for aiding and abetting liability to apply to suits brought by private parties under the Internal Revenue Code, it would have added a provision like that in the Commodity Exchange Act, 7 U.S.C. § 25(a)(1), which provides that "any person . . . who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable . . . to any other person who" was impacted by their actions. Statutes containing such express aiding-and-abetting provisions abound. *See Cent. Bank of Denver*, 511 U.S. at 182–83 (collecting statutes).

The reasoning of the courts that have held that Section 7434 applies also to those who caused or aided or abetted filing is not convincing. Many focus on the expansive nature of the phrase "any person," but doing so in isolation reads out the word "filer," and the instruction that

the suit be made only against "the person so filing."  *See Czerw*, 2025 WL 5859525, at *2;

*Angelopoulos v. Keystone Orthopedic Specialists, S.C., Wachn, LLC*, 2015 WL 2375225, at *4

(N.D. Ill. May 15, 2015).  They point also to legislative history accompanying the statute which

states that the private cause of action was meant to provide relief against "persons intent on either

defrauding the IRS or harassing taxpayers."  *Czerw*, 2025 WL 5859525, at *2 (quoting Staff of the

Joint Comm. on Taxation, 104th Cong., Part Three: Taxpayer Bill of Rights 2 (Joint Comm. Print

1996)).  Where the text of a statute provides a "clear answer," as here, "our analysis ends there,"

and "any reliance on legislative history to reach a contrary result is precluded."  *Springfield Hosp.,*

*Inc. v. Guzman*, 28 F.4th 403, 422 (2d Cir. 2022) (citations omitted).  The Supreme Court has

emphasized as much specifically with regard to the "Blue Books" prepared by the Joint Committee

on Taxation.  These "commentaries on recently passed tax laws" "are written after the passage of

the legislation and therefore do not inform the decisions of the members of Congress who vote for

the law.  We have held that such post-enactment legislative history (a contradiction in terms) is

not a legitimate tool of statutory interpretation."  *United States v. Woods*, 571 U.S. 31, 47–48

(2013).

       In any case, that Congress was focused in Section 7434 on persons either intending to

defraud the IRS or to harass taxpayers does not answer the question of whether Congress was

focused on the filer or those who may have assisted the filer.  It is well understood that "no

legislation pursues its purposes at all costs."  *Rodriguez v. United States*, 480 U.S. 522, 525–526

(1987).  And courts must not allow "ambiguous legislative history to muddy clear statutory

language."  *Azar v. Allina Health Servs.*, 587 U.S. 566, 579 (2019) (quoting *Milner v. Dep't of*

*Navy*, 562 U.S. 562, 572 (2011)).  There are myriad reasons that Congress would have designated

liability only for those filing fraudulent information returns.  The facts of this case demonstrate the

difficulty of assigning liability to any person other than the "filer" that might play some minor role with regard to an information return that is eventually filed.

Given that only the legal person who files the W-2 is liable under 26 U.S.C. § 7434, and that R&P Pizza was the entity required to do so and is the only Defendant listed on the W-2s, Plaintiffs are not entitled to summary judgment against Rigoberto.[8]

R&P Pizza, on the other hand, is liable if its conduct was willful. The Second Circuit has not defined "willfulness" in Section 7434, although the meaning of the word "willful" is well-trod territory. It is a "word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998). The Supreme Court has instructed, however, that "where willfulness is a statutory condition of civil liability, [it is] generally taken . . . to cover not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Such a construction "reflects common law usage, which treated actions in 'reckless disregard' of the law as 'willful' violations." *Id.* (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 34, at 212 (5th ed. 1984)).

The D.C. Circuit's opinion in *Doherty v. Turner Broadcasting Systems, Inc.*, 72 F.4th 324 (D.C. Cir. 2023) is instructive on the meaning of willful in Section 7434 specifically. As the Supreme Court did in *Safeco*, the D.C. Circuit first looked to the "well-settled common law meaning" of the undefined term. *Id.* at 328 (quoting *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 187 (2016)). It concluded that at common law, "willfulness encompasses actions taken either knowingly or in 'reckless disregard of the law.'" *Id.* (quoting *Safeco*, 551 U.S. at 58

---

[8] Defendants do not move for summary judgment against Plaintiffs on the 26 U.S.C. § 7434 claim.

(2007)).    The court noted too that in Section 7434, Congress buttressed "willfully" with "fraudulent," which at common law (per one "widely cited" decision from the United Kingdom) meant a representation made "(1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false."  *Id.* (quoting *Derry v. Peek* [1889] 14 App. Cas. 337, 374 (HL)); *see also* Restatement (Second) of Torts § 526 cmt. e (A.L.I. 1977); *Fraud*, Black's Law Dictionary (11th ed. 2019).  "In sum, 26 U.S.C. § 7434 requires a plaintiff to show that (1) the defendant filed an information return on his or her behalf, (2) the return was false as to the amount paid, and (3) the defendant acted knowingly or recklessly."  *Doherty*, 72 F.4th at 329.

The Court thus disagrees with those decisions that have interpreted "willfully" as used in Section 7434 to require "a showing of intentional wrongdoing."  *Wang v. Leo Chuliya, Ltd.*, 2024 WL 2221237, at *2 (S.D.N.Y. May 16, 2024).  The court in *Wang* cited to *Pitcher v. Waldman*, 591 F. App'x 466, 467 (6th Cir. 2015), *Maciel v. Comm'r*, 489 F.3d 1018, 1026 (9th Cir. 2007), and *Granado v. Comm'r*, 792 F.2d 91, 93 (7th Cir. 1986) to support its conclusion to that effect. Nothing in those cases, however, convincingly rebuts the careful analysis in *Doherty*.  The court in *Pitcher* did not define "willfully," and found just that conduct that *was* intentional satisfied the statute.  591 F. App'x at 467.  And in *Maciel*, the Ninth Circuit simply reiterated the standard for tax fraud generally in that circuit and did not address Section 7434.  489 F.3d at 1026–27.  Finally, in *Granado* the Seventh Circuit similarly did not address Section 7434 and focused only on fraud in civil tax collection.  792 F.2d at 93.  *Doherty* addressed the comparison to standard criminal tax fraud cases head on, explaining, as the Supreme Court has also explained, that the definition of willfulness that connotes only a voluntary, intentional violation is "an exception to the traditional rule" and is applied in criminal tax fraud to prevent a "bona fide misunderstanding" from becoming

criminal conduct. *Doherty*, 72 F.4th at 329 (quoting *Cheek v. United States*, 498 U.S. 192, 200 (1991)). A statute with "civil penalties" simply "does not carry the same risk." *Id.*[9]

R&P Pizza is liable under Section 7434 if it acted knowingly or recklessly. The company, as Plaintiffs' corporate employer, filed returns that inaccurately reported Gael's wages as only those he was paid by check, and not his pay in cash. Whether the company acted with the requisite *mens rea* is a question of fact for the jury to resolve at trial.

## CONCLUSION

Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' cross-motion for summary judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 51, 52, 58.


SO ORDERED.

Dated: August 22, 2025
      New York, New York                            _____
                                                     LEWIS J. LIMAN
                                                     United States District Judge

---

[9] The court in *Wang* relied also on a House Report for Section 7434, noting that although it was enacted to address the fact that "some taxpayers may suffer significant personal loss and inconvenience as a result of the IRS receiving fraudulent information returns," Congress stated too that it did not intend "to open the door to unwanted or frivolous actions or abusive litigation practices." H.R. Rep. 104-506, at 37 (Mar. 28, 1996). Such legislative history may be helpful where "the words are not clear." *Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 51 (2d Cir. 2025). Even so, it is not obvious why the meaning of "willfully" articulated in *Safeco* and *Doherty* that includes "reckless disregard for the law" would invite such "frivolous" actions, where that standard is accepted at common law. *Doherty*, 72 F.4th at 329 (noting that where there is "no indication that Congress had something different in mind, we have no reason to deviate from [the common law] understanding"). This is particularly true as although "recklessness is not self-defining, the common law has generally understood it in the sphere of civil liability as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)).